DISTRICT OF OREGON, ss:                           AFFIDAVIT OF SAMUEL LANDIS

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Samuel Landis, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.     I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March of 2016. Currently, I work in the Seattle Field Division, Salem Resident Office. Prior to my employment with the DEA, I worked as a Border Patrol Agent from November 2009 to March 2016. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code. I received formal training at the DEA Basic Agent Training Academy in Quantico, Virginia. The 22-week training included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition to Basic Agent Training, I have completed Money Laundering Training, Traps and Concealed Compartments Training, and other various courses that have familiarized me with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations.

2.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers,

interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for **Kelley Ray KAIGHIN** for the crime of Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). As set forth below, there is probable cause to believe, and I do believe, that **Kelley Ray KAIGHIN** violated 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

### Applicable Law

4. Title 21, United States Code, Section 841(a)(1) prohibits the distribution and possession with the intent to distribute controlled substances, including heroin, a Schedule I controlled substance and fentanyl, a Schedule II controlled substance.

### Statement of Probable Cause

5. On January 17, 2023, the Honorable Youlee Yim You, United States Magistrate Judge, District of Oregon, signed search warrant 3:22-mc-36, authorizing agents to search the residence of **Kelley Ray KAIGHIN**, 630 Madrona Ave S, Salem, Oregon ("Premises").

6. On January 18, 2023, at approximately 12:00 p.m., agents and officers of the Salem DEA established surveillance near the Premises.

7. At approximately 3:06 p.m., Special Agent (SA) Jeff Thomas and I observed **Kelley Ray KAIGHIN** exit the Premises via the attached garage. SA Thomas and I subsequently observed **Kelley Ray KAIGHIN** access the driver's side of a light blue colored Chevrolet Spark (OR/800KHH) and reach over to the passenger side as if he was placing an item near the seat. Agents were not able to see if **Kelley Ray KAIGHIN** carried an item out of the Premises; however,

when **Kelley Ray KAIGHIN** got into the driver's side of the Chevrolet Spark, he continued to adjust an item on the passenger side. Minutes later, **Kelley Ray KAIGHIN** departed the Premises in the Chevrolet Spark. Agents followed the vehicle.

8. **Kelley Ray KAIGHIN** is a convicted felon and has criminal history that includes multiple violent offenses. Most notably, during an encounter with law enforcement in 1986, **Kelley Ray KAIGHIN** shot and injured an officer in Salem, Oregon. Based on this information and in an effort to safely detain **Kelley Ray KAIGHIN** prior to executing the search warrant, agents arranged for a marked Salem Police vehicle to conduct a traffic stop on the Chevrolet Spark.

9. At approximately 3:24 p.m., agents observed the Chevrolet Spark parked roadside in front of a driveway. Task Force Officer (TFO) Vince Dawson initiated a traffic stop on the Chevrolet Spark. SA Adam Otte, SA Todd Hoagland and myself all provided support during the stop. TFO Dawson contacted **Kelley Ray KAIGHIN** and removed him from the vehicle. SA Todd Hoagland, in plain view through the front passenger-side window, observed the stock of a firearm in an open bag on the floorboard of the vehicle. As stated above, **Kelley Ray KAIGHIN** is a convicted felon and is prohibited from carrying/possessing firearms. During a safety check of **Kelley Ray KAIGHIN**, TFO Dawson located two plastic baggies containing a white powdery substance in his pants pocket. Through my training and experience, I recognized this substance to be consistent with what I know to be fentanyl and/or cocaine. Each of the two baggies were later field-test and returned with presumptive positive results for the presence of cocaine and fentanyl. Based on my training and experience, the quantities of the suspected cocaine and suspected fentanyl were consistent with what I know to be user amounts.

10. **Kelley Ray KAIGHIN** was restrained and place in the rear of a police vehicle. There, during post-Miranda statements, **Kelley Ray KAIGHIN** provided me with consent to

search the Chevrolet Spark. During a subsequent search, agents observed a backpack on the passenger-side floorboard. Within the backpack, agents located and seized the following: (1) approximately three kilograms of suspected heroin, which later field-tested presumptive positive for the presence of heroin; (2) roughly 1,500 suspected fake oxycodone tablets – believed to be manufactured with fentanyl – which were not subject to a field-test; and (3) approximately 65.3 grams[1] of suspected ecstasy, which was not subject to a field-test. Additionally, agents located and seized a stolen handgun from the same backpack. The handgun was not loaded.

11. Agents relocated to the Premises and executed the search warrant. In the garage of the Premises, agents located and seized the following: (1) approximately 1,000 suspected fake oxycodone tablets – believed to be manufactured with fentanyl – which were not subject to a field-test; (2) approximately 496.2 grams suspected fentanyl powder, which later field-tested presumptive positive for the presence of fentanyl; and (3) approximately 50.1 grams of suspected ecstasy, which was not subject to a field-test.

12. Next, agents searched a room **Kelley Ray KAIGHIN** reported to be his daughter's room. **Kelley Ray KAIGHIN** also stated there was a handgun locked in a safe within the room. During a search of this room, agents located and seized the following: (1) approximately 165.4 grams of suspected heroin, which later field-tested presumptive positive for the presence of heroin; (2) approximately 4,500 suspected fake oxycodone tablets – believed to be manufactured with fentanyl – which were not subject to a field-test; (3) approximately 1,107.6 grams of marijuana; and (4) quantities consistent with what I know to be user amounts of suspected methamphetamine, mushrooms (believed to contain psilocybin), suspected Xanax bars, and suspected cocaine. Additionally, agents located a stolen firearm from within a safe. The handgun was not loaded.

---

[1] All weights of suspected drugs include DEA packaging.

13.     Based upon my training and experience, I know that approximately three kilograms, of heroin is not a user quantity, but rather indicates it is possessed for purposes of further distribution. Furthermore, the way the heroin was packaged in one-kilogram bags is also indicative of possession with the intent to distribute. I know that, between larger dealers, a kilogram of heroin can sell for between $25,000 to $30,000 a kilogram and given its valuable nature, drugs in large quantities such as this are not given or entrusted to unwitting individuals. Moreover, in total, agents seized approximately 1,150.4 grams[2] of suspected fentanyl from **Kelley Ray KAIGHIN**. Through my training and experience, I know this amount of fentanyl is not user quantity. Additionally, much of the fake oxycodone tablets were packaged in small individual baggies in quantities of 50-100 tablets per bag. In my experience, I recognize this packaging to be consistent with preparation for distribution.

## Conclusion

14.     Based on the foregoing, I have probable cause to believe, and I do believe, that on or about January 18, 2023, within the District of Oregon, **Kelley Ray KAIGHIN** knowingly and intentionally Possess with the Intent to Distribute 1000 grams or more of heroin, a Schedule I controlled substance and 400 grams or more of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). I therefore request that the Court issue a criminal complaint and arrest warrant for **Kelley Ray KAIGHIN**.

15.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Lewis Burkhart and AUSA Burkhart advised me that in his opinion the affidavit and complaint are legally

10:38          xxxx

---

[2] This is a combined weight, which includes the suspected fentanyl powder and suspected fake oxycodone tablets that were seized from KAIGHIN's vehicle and from his residence.

and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

16. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the individual to be arrested is relevant to an ongoing investigation, and any disclosure of the individual's arrest at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

/S/ *By Phone*

SAMUEL LANDIS
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 10:28 a.m. ~~xxxx/pxxx~~ on January 19, 2023.

*Youlee Yim You*

HON. YOULEE YIM YOU
United States Magistrate Judge

Affidavit of Samuel Landis                                                                                                 Page 6